UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

CHRISTOPHER SCHUMANN

              Plaintiff,                    Civil Action No.: 3:25-cv-921

    v.

QUARTZ HEALTH BENEFIT PLANS
CORPORATION,

              Involuntary Plaintiff,

KEVIN JONES, BLAKE BRANDNER,
COLUMBIA COUNTY, MEGAN FAHEY,
KATELYN BEHLING, CITY OF PORTAGE,
ABC INSURANCE COMPANY,
DEF INSURANCE COMPANY.

              Defendants.

## COMPLAINT

NOW COMES Plaintiff, Christopher Schumann, by his attorneys, Gingras, Thomsen & Wachs, LLP, by Attorneys Mark L. Thomsen and Isaac P. Huettl, and files this complaint against Defendants Kevin Jones, Blake Brandner, Columbia County, Megan Fahey, Katelyn Behling, City of Portage, ABC Insurance Company, and DEF Insurance Company.

### INTRODUCTION

1.    This action is brought to redress Columbia County Deputy Kevin Jones, Deputy Blake Brandner, Portage Police Department Officer Megan Fahey and Officer Katelyn Behling's excessive use of force and failure to intervene in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

2.      Plaintiff Christopher Schumann ("Mr. Schumann") suffers from Type 1 diabetes, rendering him insulin dependent. At the time of the incident that is the subject of this lawsuit, unknown to him, Mr. Schumann's blood sugar dropped to a dangerously low range, rendering him hypoglycemic. Mr. Schumann remained conscious but became disoriented and confused as he was driving on the highway when officers tried to initiate a traffic stop.

3.      After safely stopping behind Deputy Kevin Jones' squad car, Mr. Schumann did not respond to officers' orders to put his hands up or exit his car. When he did respond, he did so by smiling or giving a thumbs-up to the officers. Despite Mr. Schumann's apparent calm state, Deputy Brandtner instructed his canine to bite Mr. Schumann and dragged him out of the vehicle. While Mr. Schumann was face-down on the ground with three other officers on top of him, Deputy Brandtner instructed his canine to bite Mr. Schumann's leg. Deputy Jones then tased Mr. Schumann in the back at least four times and struck him with a closed fist at least seven times, and Officer Fahey struck him in the arm with a fist four times.

4.      After completing the assault of Mr. Jones and handcuffing him, Officer Jones called him an "idiot," and yelled at him "how dumb can you be?" Even after Mr. Schumann explained that he was suffering from a severe medical emergency due to his diabetes, Mr. Jones told him "Well, if you're insulin dependent, then that's pretty dumb not to check your sugars."

5.      Deputy Jones, Deputy Brandner, Officer Fahey, and Officer Behling's conduct was purposeful and flagrant. Rather than rendering aid to a citizen in critical condition, the officers used excessive force despite that Mr. Schumann was not actively resisting, did not pose a threat to the officers' safety, and was not a flight risk. Rather than providing him with the medical attention he required in his vulnerable state, the Defendant Officers used excessive force and harmed Mr. Schumann.



**PARTIES**

6.      Plaintiff Mr. Schumann is an adult resident of the State of Wisconsin residing at 500 Eureka Street, Ripon, WI 54971. At all times material hereto, Mr. Schumann was entitled to all rights and privileges granted by the United States Constitution.

7.      Involuntary Plaintiff Quartz Health Benefit Plans Corporation ("Quartz") is a Wisconsin insurance corporation, duly organized and existing under and by virtue of the laws of the State of Wisconsin, with offices of its Registered Agent, Quartz Health Solutions, located at 2650 Novation Pkwy., Fitchburg, WI 53713. Quartz has paid medical and related bills on behalf of the Plaintiff as a result of the injuries he sustained in the incident which is the subject of this lawsuit. Quartz has no legal right to subrogation or reimbursement despite its payment of benefits, but by reason of such payments, Quartz is a proper party herein pursuant to Wis. Stat. § 803.03.

8.      Defendant Deputy Kevin Jones ("Deputy Jones") is an adult resident of the State of Wisconsin. Deputy Jones was employed as a deputy sheriff by the Columbia County Sheriff's

Office ("CCSO") and was acting under color of law and within the scope of his employment with the CCSO and/or Columbia County at all times relevant hereto.

9.      Defendant Deputy Blake Brandner ("Deputy Brandner") is an adult resident of the State of Wisconsin. Deputy Brandner was employed as a deputy sheriff by the CCSO and was acting under color of law and within the scope of his employment with the CCSO and/or Columbia County at all times relevant hereto.

10.     Defendant Columbia County, located in the Western District of Wisconsin, is and was at all times material hereto, a municipal government organized under the laws of the State of Wisconsin with offices of its executive located at 112 E. Edgewater St., Portage, WI 53901. Columbia County is the employer of Deputy Jones and Deputy Brandner, who were acting in the scope of their employment at the time of the incident. Columbia County is required to pay or indemnify all judgments, including compensatory and punitive damages, attorney's fees and costs that may be awarded against its officials, employees and agents.

11.     Defendant Officer Megan Fahey ("Officer Fahey") is an adult resident of the State of Wisconsin. Officer Fahey was employed as an officer by the City of Portage Police Department and was acting under color of law and within the scope of her employment with the City of Portage Police Department and/or the City of Portage at all times relevant hereto.

12.     Defendant Officer Katelyn Behling ("Officer Behling") is an adult resident of the State of Wisconsin. Officer Behling was employed as an officer by the City of Portage Police Department and was acting under color of law and within the scope of her employment with the City of Portage Police Department and/or the City of Portage at all times relevant hereto.

13.     Defendant City of Portage, located in the Western District of Wisconsin, is and was at all times material hereto, a municipal government organized under the laws of the State of

Wisconsin with offices of its executive located at 115 W. Pleasant St., Portage, WI 53901. The City of Portage employed Officer Fahey and Officer Behling, who were acting in the scope of their employment at the time of the incident. City of Portage is required to pay or indemnify all judgments, including compensatory and punitive damages, and attorney's fees and costs that may be awarded against its officials, employees and agents.

14. ABC Insurance Company is the fictitious name for an unknown insurance company that was engaged in writing and selling a policy of liability insurance covering the conduct of Deputy Jones, Deputy Brandner, and Columbia County. Pursuant to Wis. Stat. § 807.12, ABC Insurance Company is being inserted in place of the real or proper defendant, which as soon as their identity is ascertained, will be substituted in place of ABC Insurance Company.

15. DEF Insurance Company is the fictitious name for an unknown insurance company that was engaged in writing and selling a policy of liability insurance covering the conduct of Officer Fahey, Officer Behling, and City of Portage. Pursuant to Wis. Stat. § 807.12, DEF Insurance Company is being inserted in place of the real or proper defendant, which as soon as their identity is ascertained, will be substituted in place of DEF Insurance Company.

**JURISDICTION AND VENUE**

16. This Court has jurisdiction over Plaintiff's claims and the Parties pursuant to 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).

17. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

**FACTS**

18. On the morning of October 31, 2024, Mr. Schumann was driving his work truck from Portage to Baraboo, WI. During this trip, unknown to him, Mr. Schumann's became hypoglycemic due to low blood sugar, resulting in neurologic impairment.

19.    Officer Fahey attempted to make a traffic stop on Highway 33 near the intersection with Fairfield St. in Portage WI, but Mr. Schumann did not understand that he was supposed to pull over and continued driving.

20.    Officer Fahey continued to follow Mr. Schumann on the highway, and Deputy Jones and Deputy Brandner responded to assist.

21.    The officers noted that Mr. Schuman's speed ranged between 40-50 miles per hour, and he was having difficulty maintaining his lane of travel.



22.    At approximately 6:58 a.m., Deputy Jones passed in front of Mr. Schumann and decelerated. Mr. Schumann decelerated as well and came to stop behind Deputy Jones' squad car, with Officer Fahey and Deputy Brandner's squad car behind his vehicle.

23.    At approximately 6:59 a.m., Deputy Brandner and Deputy Jones exited their squad cars and pointed their guns at Mr. Schumann.





24.     Officer Brandner pounded on the driver's side window and ordered Mr. Schumann to put the car in park. Deputy Jones yelled at Mr. Schumann to put his hands up. Mr. Schumann did not directly respond to the requests, keeping his hands on the steering wheel during most of the interaction.

25.    At approximately 7:00 a.m., Deputy Jones backed his squad car directly in front of Mr. Schuman's vehicle to prevent him from driving away.

26.    Deputy Brandner returned to his squad car and retrieved his canine, a 100-pound German Shepard.

27.    At approximately 7:00:39, Deputy Brandner returned to the passenger side of Mr. Schumann's vehicle and yelled that they were going to release a canine on Mr. Schumann if he did not start obeying their commands. Mr. Schumann continued to calmly sit in his vehicle facing forward.

28.    At approximately 7:00:56, Deputy Jones informed Deputy Brandner that he believed Mr. Schumann was "on the nod."

29.    At approximately 7:01:05, Deputy Jones unsuccessfully attempted to open Mr. Schumann's driver's side door. In response, Mr. Schumann smiled at Deputy Jones and gave him a thumbs-up. Deputy Jones continued pointing his weapon directly at Mr. Schumann.



30.    Officer Fahey opened the passenger side door of Mr. Schumann's vehicle, and the officers ordered Mr. Schumann to put his hands up. Mr. Schumann remained calmly seated in his vehicle.



31.    At approximately 7:01:23 and 7:01:35, the officers gave a "final warning" that Mr. Schumann would get bit by a dog.

32.    At approximately 7:01:51, less than three minutes after stopping Mr. Schumann's vehicle, Deputy Brandner deployed the canine, who bit Mr. Schumann's right arm.



33.    Deputy Brandner gained control of Mr. Schumann's right arm, while the canine

was still biting him, and Deputy Brandner and Deputy Jones pulled Mr. Schumann out of the

vehicle headfirst while he was screaming out in pain.





34.    After removing him from the vehicle, Deputy Jones pinned Mr. Schumann's right arm to the ground.



35.    Officer Fahey and Officer Behling assisted Deputy Jones in pinning Mr. Schumann to the ground.



36.    Deputy Brandner yelled at Mr. Schumann that he was going to get bit again, despite that Deputy Jones clearly had his right arm secured and Officer Fahey and Officer Behling were securing his left arm.

37.    At approximately 7:02:41, Deputy Jones handcuffed Mr. Schumann's right arm.



38.     Deputy Jones, Officer Fahey, and Officer Behling rolled Mr. Schumann onto his stomach. Deputy Brandner again threatened Mr. Schumann that he was going to get bit again.

39.     At approximately 7:03:16, while the three officers had Mr. Schumann pinned to the ground on his stomach, Deputy Brandner commanded the canine to bite Mr. Schumann again.



40.    The canine bit Mr. Schumann's left calf for approximately twelve seconds.

41.    At 7:03:30, Mr. Schumann was lying on his stomach, and two officers had control of Mr. Schumann's left arm behind his back while one of the officers had secured Mr. Schumann's right arm with the previously applied handcuff.



42.    At 7:03:38, Deputy Jones struck Mr. Schumann in the shoulder with a closed fist seven times.

43.    At 7:03:49, Deputy Jones, without warning, tased Mr. Schumann in the back while holding Mr. Schumann's left arm behind his back and as Officer Behling and Officer Fahey were holding his right arm.



44.    At 7:03:58, Officer Fahey struck Mr. Schuman in the arm with a closed fist four times.

45.    At 7:04:00, Deputy Jones tased Mr. Schumann again at least two more times.

46.    At approximately 7:04:20, Deputy Jones and the officers handcuffed Mr. Schumann.

47.    Deputy Jones yelled at Mr. Schumann to listen to what the officers were saying. Distraught, bloodied, and screaming in agony, Mr. Schumann replied, "I am." Deputy Jones yelled, "No you're not you idiot."



48.    Deputy Jones inquired, "Dude, what are you on?" Mr. Schumann replied, "Nothing." Deputy Jones responded "Yeah, my ass. What are you on?"

49.    The officers continued to scream at Mr. Schumann to relax despite that they had just beaten him, tased him, and twice ordered a dog to bite him. When Mr. Schumann tried to tell them he was relaxed, Deputy Jones yelled at him, "No you're not; your muscles are tense. Now relax." As Mr. Schumann pleaded for the officers to take off the handcuffs, Deputy Jones told him, "God, how dumb can you be."

50.    At 7:06:26, Deputy Jones asked Mr. Schumann if he knew where he was. Scared and confused, Mr. Schumann replied, "No, I have no idea where I'm at."

51.    At 7:06:38, Mr. Schumann informed the officers that he was diabetic. Deputy Jones asked him when the last time he checked his sugars, to which Mr. Schumann replied that he had not checked in a "long time."

52.     After Mr. Schumann told the Officers that he was insulin dependent, while still pinned, face-down to the ground, Deputy Jones told Mr. Schumann "Well, if you're insulin dependent, then that's pretty dumb not to check your sugars."

53.     The officers continued to refuse to remove the handcuffs from Mr. Schumann as they rolled him on his side and back to apply a tourniquet to his now severely bleeding leg.



54.     Baraboo District EMS arrived on the scene and determined that Mr. Schumann's blood sugar was 55. His normal range was between 70-150. Mr. Schumann was ultimately transported to Aspirus Health to receive medical attention for his significant wounds:

  

  

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS JONES, BRANDNER, AND FAHEY – EXCESSIVE FORCE**

55.     Plaintiff realleges and incorporates by reference all preceding allegations.

56.     At all times relevant herein, the above-named Defendants were "persons" for purposes of 42 U.S.C. § 1983 and acted under the color of state law and within the scope of their employment to deprive Mr. Schumann of his constitutional rights.

57.     At all times material hereto, Mr. Schumann had a clearly established constitutional right under the Fourth Amendment to be protected against the excessive use of force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

*Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 524-25 (7th Cir. 2012) (finding that an intoxicated, non-resisting plaintiff had a clearly established right to be free from excessive force, which included multiple trauma-inducing shots).

58.     At the time of the incident, it was clearly established that it was unlawful for officers to instruct a canine to bite a person, deploy a taser, or strike an individual who was not resisting, or at worst, passively resisting arrest. *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 524-25 (7th Cir. 2012) (finding that when a plaintiff does not exhibit any sort of aggressive behavior toward officers and does not pose a threat to escape, a plaintiff failing to follow commands to exit a vehicle does not constitute "active resistance," and may not even constitute resistance at all). Only minimal force is warranted to remove a driver perceived to be intoxicated and passively resisting. *Id.* at 525. It was also clearly established that a plaintiff is not violently resisting arrest even if he refused to release his arms for handcuffing, particularly when the plaintiff is face-down on the ground and presents little risk to the officers' safety. *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010)

59.     At all times material hereto, Plaintiff was not actively resisting arrest, did not threaten the officers, and was not a flight risk, rendering the Defendants use of force – which included but was not limited to grabbing his arms, violently dragging him out of his vehicle, deploying a canine and twice instructing the canine to bite him, tasing him, and striking him with a closed fist while he was subdued and helpless on the ground suffering from a medical emergency – excessive, unlawful, and without cause or justification in violation of Mr. Schumann's Fourth Amendment rights as incorporated by the Fourteenth Amendment.

60.     The described conduct on the part of the Defendants as set forth above was a cause of the Plaintiff's injuries, losses, and damages as set forth herein.

61.     The Defendants, Columbia County and City of Portage, are liable for payment of any judgment entered against the individual employee defendants in this action because said defendants were acting within the scope of their employment when they committed the unlawful acts described above.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS JONES, BRANDNER, FAHEY, AND BEHLING – FAILURE TO INTERVENE

62.     Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs.

63.     Before Mr. Schumann suffered from the excessive use of force above, the individual Defendants had an opportunity to intervene and prevent the injuries Mr. Schumann suffered as a result of the violations of his civil rights.

64.     As a result of the individual Defendant Officers' failure to intervene, Mr. Schumann suffered injuries, losses, and damages as set forth herein.

65.     The Defendants, Columbia County and City of Portage, are liable for payment of any judgment entered against the individual employee defendants in this action because said defendants were acting within the scope of their employment when they committed the unlawful acts described above.

## REMEDY – PUNITIVE DAMAGES

66.     Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs.

67.     The above-described conduct of the individual Defendants was unlawful, extreme, malicious, outrageous, and/or intentional.

68.     Such conduct was intended to cause Mr. Schumann unnecessary and severe personal, physical, and psychological and emotional damages.

20

69.     Such conduct on the part of all the individual Defendants was a cause of the severe physical, psychological, and emotional personal injuries suffered by Mr. Schumann.

70.     At all times material hereto, the individual Defendants acted maliciously and/or with reckless disregard and/or with deliberate indifference toward Mr. Schumann or in an intentional disregard of his rights, such as to subject all the individual Defendants to punitive damages.

71.     The Defendants, Columbia County and City of Portage, are liable for payment of any judgment entered against the individual employee defendants in this action because said defendants were acting within the scope of their employment when they committed the unlawful acts described above.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

a. Against Defendants Jones, Brandner, Fahey, and Behling, in their individual capacities, for compensatory damages, for personal injuries and losses and violation of Mr. Schumann's rights, as set forth above, in an amount to be determined at trial of this matter;

b. Against Defendants Jones, Brandner, Fahey, and Behling, in their individual capacities, for compensatory damages, for punitive damages, for the violations of Mr. Schumann's rights, as set forth in an amount to be determined at a trial of this matter;

c. Against Defendants Columbia County and City of Portage for their liability pursuant to Wis. Stat. § 895.46 to indemnify the individual Defendants in an amount to be determined at a trial of this matter;

d. Against Involuntary Plaintiff Quartz, finding that it has no rights to the proceeds of any award or judgment in this matter.

e. For all costs, disbursements, and actual attorney's fees pursuant to 42 U.S.C. § 1988,

and for other such relief as the Court deems just and equitable.

**PLEASE TAKE NOTICE THAT PLAINTIFF DEMADNS A JURY TRIAL IN THE**

**ABOVE-ENTITLED ACTION**

Dated at Madison, Wisconsin, this 7th day of November, 2025

**GINGRAS, THOMSEN & WACHS, LLP**
Attorneys for Plaintiff

<u>Electronically signed by Attorney Isaac P. Huettl</u>
Mark L. Thomsen
State Bar No.: 1018839
Isaac P. Huettl
State Bar No.: 1122828

<u>**P.O. ADDRESS**</u>
219 N. Milwaukee Street
Suite 520
Milwaukee, WI 53202
Telephone:      (414) 837-4167
Facsimile:      (414) 763-6413
Email:           mthomsen@gtwlawyers.com
                 ihuettl@gtwlawyers.com